2017 ND 136

**Lynne THOMPSON, Plaintiff and Appellant**

v.

**LITHIA ND ACQUISITION CORP. #1 d/b/a Lithia Ford Lincoln Mercury of Grand Forks, Defendant and Appellee**

No. 20160280

Supreme Court of North Dakota.

Filed 6/7/2017

David C. Thompson (argued), Grand Forks, ND, and DeWayne A. Johnston (on brief), Grand Forks, ND, for plaintiff and appellant.

Ryan C. McCamy (argued), Fargo, ND, and Thaddeus E. Swanson (on brief), Fargo, ND, for defendant and appellee.

VandeWalle, Chief Justice.

[¶ 1] Lynne Thompson appealed from a district court order compelling arbitration, a judgment confirming the arbitration award, and an order denying her motion to vacate the judgment or for a new trial. We affirm, concluding the district court did not err in compelling arbitration or confirming the arbitrator's award.

## I

[¶ 2] In April 2014, Thompson sued Lithia ND Acquisition Corp. #1, seeking to rescind a contract to purchase a vehicle and for damages for unjust enrichment and unlawful sales practices. Lithia moved to dismiss Thompson's complaint and to compel arbitration, arguing there was an enforceable agreement to arbitrate. Thompson responded to the motion, arguing the arbitration agreement was unenforceable and unconscionable and claiming she was entitled to a jury trial on the issue of the enforceability.

[¶ 3] On June 10, 2014, after a hearing on the motion, the district court entered an order staying the action and compelling arbitration. The court ruled Thompson failed to provide sufficient evidence entitling her to a jury trial on the issue of whether the arbitration agreement was enforceable. Thompson moved for reconsideration of the order compelling arbitration. The district court denied Thompson's motion and confirmed the order staying the action and compelling arbitration. The court also ordered arbitration be completed by January 6, 2015.

[¶ 4] In a letter dated January 16, 2015, the district court requested the parties update it on the status of the case and stated it was aware the parties were having difficulty finding an arbitrator. In a letter dated February 18, 2015, Lithia advised the court that the parties attempted to settle the matter but the attempt had stalled and it would be "initiating the matter with a suitable arbitrator pursuant to the contracts."

[¶ 5] In an order dated February 15, 2015, the district court ordered the parties to appear on April 2, 2015, and show cause why the proceedings should not be dismissed. Thompson filed a "pre-hearing response" to the order to show cause, arguing the proceedings should not be dismissed and Lithia should be required to provide the funds to locate and retain an arbitrator who is a retired judge and is certified by the American Arbitration Association ("AAA"). In a March 17, 2015 letter, Lithia informed the court it had filed a demand for arbitration with the AAA on March 6, the file was "under review" with AAA, and it would be willing to conduct the arbitration with one of three named local arbitrators.

[¶ 6] On March 19, 2015, the district court entered an order cancelling the hearing on the order to show cause and extending the deadline. The court stated Thompson had the burden to pay the costs of the arbitration, the AAA rules do not require the use of an "AAA-certified" arbitrator if the parties' agreement names an arbitrator or specifies a method of appointing an arbitrator, the agreement states the arbitrator shall be a retired judge, and an AAA-certified arbitrator was not required. The court ordered the parties to select a retired judge as the arbitrator or Thompson to select one of three named arbitrators if the parties could not agree, or Wickham Corwin would be appointed if an arbitrator was not selected by April 15, 2015.

[¶ 7] The parties completed arbitration with Corwin as the arbitrator, and the arbitrator's final decision and award was filed in the district court on August 3, 2015. The arbitrator decided Thompson failed to establish she was entitled to relief, there was no legal basis to award Thompson damages, and Thompson stopped payment on the $6,000 check she provided for payment on the vehicle. The arbitrator awarded Lithia $6,000 in damages.

[¶ 8] On October 28, 2015, Thompson moved to vacate the arbitration award. Thompson argued the district court failed to comply with AAA procedural rules by mandating Corwin serve as the arbitrator, the arbitrator was not impartial, and the evidence supported her claims. Lithia opposed the motion to vacate, arguing the arbitrator was properly appointed and impartial. On March 3, 2016, the district court denied the motion to vacate and ordered entry of judgment. The court ruled the March 19, 2015 order, which led to Corwin serving as arbitrator, did not unlawfully preempt the AAA rules and Thompson consented to the selection of the arbitrator by failing to object until the arbitrator's decision was issued, and the arbitrator was neutral and the decision was not irrational. The court also ordered neither party would recover their costs and attorneys fees. On June 14, 2016, a judgment for $6,266.05 was entered in favor of Lithia.

[¶ 9] On August 10, 2016, Thompson moved for a new trial under N.D.R.Civ.P. 59 and relief from judgment under N.D.R.Civ.P. 60(b), arguing the judgment should be vacated because federal arbitration law was not applied, the selection of the arbitrator was contrary to AAA rules, and the court did not have jurisdiction to confirm the arbitration award because Lithia did not move to confirm the award within the one-year statute of limitations. The district court denied Thompson's motion.

II

[¶ 10] Thompson argues the district court misapplied the law by failing to apply the Federal Arbitration Act ("FAA") to these proceedings. Citing *DIRECTV, Inc. v. Imburgia*, — U.S. —, 136 S.Ct. 463, 193 L.Ed.2d 365 (2015), Thompson claims state arbitration law does not apply, except state law related to her unconscionability arguments.

[¶ 11] The FAA is codified at 9 U.S.C. §§ 1 to 16 and governs the enforcement of arbitration agreements in contracts involving interstate commerce. *26th St. Hosp., LLP v. Real Builders, Inc.*, 2016 ND 95, ¶ 14, 879 N.W.2d 437. The basic purpose of the FAA is "to overcome courts' refusals to enforce agreements to arbitrate." *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). This Court has held state law is preempted by the FAA insofar as it conflicts with the FAA by impeding the accomplishment and execution of the full purposes and objectives of the FAA. *Superpumper, Inc. v. Nerland Oil, Inc.*, 1998 ND 144, ¶ 15, 582 N.W.2d 647; *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (stating state law is preempted "to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' "). However, "a state is not obligated to altogether ignore its own procedural requirements in light of the procedural aspects of the FAA, provided the state-enacted procedure does not defeat the rights granted by Congress." *Superpumper*, at ¶ 16.

[¶ 12] In *DIRECTV*, 136 S.Ct. at 468–69, the Supreme Court held the FAA allows parties to an arbitration agreement to choose what law governs some or all of the agreement's provisions, but the law must be consistent with the FAA. The contract at issue stated the entire arbitration agreement was unenforceable if the "law of your state" made class-arbitration waivers unenforceable. *Id.* at 466. State law made class-arbitration waivers unenforceable when the parties entered into the contract containing the arbitration agreement, but the Court later ruled that state law was preempted and invalidated by the FAA. *Id.* at 466. The lower court held the parties to the contract were free to select state law as it would have been without federal preemption, the parties selected state law making the class arbitration waiver unenforceable, and therefore the arbitration provision was unenforceable. *Id.* at 467. The Supreme Court recognized the parties likely believed when they drafted the contract that the words "law of your state" included state law that made class-arbitration waivers unenforceable, but that law was ruled invalid under the FAA. *Id.* at 468–69. The Court held the arbitration agreement was enforceable and the lower court's interpretation was preempted by the FAA because the interpretation did not place arbitration contracts "on equal footing with all other contracts" and did not give due regard to the federal policy favoring arbitration. *Id.* at 471.

[¶ 13] Thompson appears to argue *DIRECTV* holds the FAA preempts all state arbitration law; however, she interprets the *DIRECTV* holding too broadly. The Supreme Court explained its decision "falls well within the confines of (and goes no further than) present well-established law." *DIRECTV*, 136 S.Ct. at 471; *see also Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, —— U.S. ——, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017). The Supreme Court has not held the FAA preempts all state arbitration law.

[¶ 14] Thompson does not argue any specific North Dakota statutory provision conflicts with and is preempted by the FAA. We conclude the district court did not misapply the law by failing to apply only the FAA to these proceedings.

### III

[¶ 15] Thompson argues the district court erred in compelling arbitration because the arbitration clause is unconscionable and unenforceable as a matter of law.

[¶ 16] An order granting a motion to compel arbitration is reviewed de novo on appeal, unless the decision was based on factual findings, which will only be reversed if they are clearly erroneous. *26th St. Hosp.*, 2016 ND 95, ¶ 11, 879 N.W.2d 437. Whether a provision in a contract is unconscionable is a question of law, but the determination of whether a provision is unconscionable is dependent upon the factual circumstances of the case. *Strand v. U.S. Bank Nat'l Ass'n ND*, 2005 ND 68, ¶ 5, 693 N.W.2d 918.

[¶ 17] In the order compelling arbitration, the district court stated Thompson provided no specific allegations challenging the arbitration provision and Thompson claimed "this is an adhesive contract" but did not raise any issues specifically related to the provision indicating it is adhesive. The court further said there is nothing inherently unfair or oppressive about arbitration clauses. The court also addressed Thompson's argument the arbitration provision is unconscionable, stating she was required to establish both substantive and procedural unconscionability, and she did not establish substantive unconscionability because the provision represents a standard arbitration provision and is neither harsh nor one-sided.

[¶ 18] In deciding whether a contractual provision is unconscionable, the court should "look at the contract from the perspective of the time it was entered into, without the benefit of hindsight. The determination to be made is whether, under the circumstances presented in the particular commercial setting, the terms of the agreement are so one-sided as to be unconscionable." *Strand*, 2005 ND 68, ¶ 4, 693 N.W.2d 918 (quoting *Construction Assocs., Inc. v. Fargo Water Equip. Co.*, 446 N.W.2d 237, 241 (N.D. 1989)).

[¶ 19] The court employs a two-prong framework to determine whether a contractual provision is unconscionable and considers both procedural unconscionability and substantive unconscionability. *Strand*, 2005 ND 68, ¶ 7, 693 N.W.2d 918. Procedural unconscionability relates to procedural deficiencies in the contract formation process, including refusal to bargain over contract terms. *Id.* at ¶ 10. Substantive unconscionability relates to the terms of the contract and whether the terms are unreasonably favorable to the more powerful party. *Id.* "[A] party alleging unconscionability must demonstrate some quantum of both procedural and substantive unconscionability, and courts are to balance the various factors, viewed in totality, to determine whether the particular contractual provision is 'so one-sided as to be unconscionable.'" *Id.* at ¶ 12 (quoting *Construction Assocs.*, 446 N.W.2d at 241).

[¶ 20] "Procedural unconscionability focuses upon formation of the contract and fairness of the bargaining process, including factors such as inequality of bargaining power, oppression, and unfair surprise." *Strand*, 2005 ND 68, ¶ 13, 693 N.W.2d 918. A consumer transaction is essentially a contract of adhesion, but the contract is not necessarily unconscionable because it is one of adhesion. *Id.* at ¶¶ 10, 13. "[A] consumer transaction which is essentially a contract of adhesion will be examined by the courts with special scrutiny to assure that it is not applied in an unfair or unconscionable manner against the party who did not participate in its drafting." *Id.* at ¶ 13. "When one party is in such a superior bargaining position that it totally dictates all terms of the contract and the only option presented to the other party is to take it or leave it, some quantum of procedural unconscionability is established." *Id.* at ¶ 15. Because Lithia prepared the terms of the contract and Thompson likely had little or no opportunity to change its terms, she arguably established some quantum of procedural unconscionability.

[¶ 21] Substantive unconscionability focuses on the harshness or one-sidedness of the contractual provision. *Strand*, 2005 ND 68, ¶ 20, 693 N.W.2d 918. Thompson argues the arbitration agreement was substantively unconscionable because it required the seller to pay the arbitration costs or gave the customer the option to pay fifty percent of the costs. She claims this provision offered her "the Hobson's Choice" of having Lithia pay the arbitrator, which would create an appearance of bias, or she could pay half the fees, which could exceed the damages she was requesting. The agreement allows the customer, in this case Thompson, to choose whether Lithia paid all the expenses or the parties split the expenses equally. Thompson also claims the agreement is substantively unconscionable because it allows the seller to take a four hour deposition of the customer and only allows the customer to take a four hour deposition of one employee that participated in the transaction. She claims she would have more discovery rights in civil litigation and the agreement allows the seller to select its least informed employee for the deposition. The agreement states, "In any dispute Seller shall

have the right to take a four hour deposition of Customer and Customer shall have the right to take a four hour deposition of one employee of Seller that has participated in this transaction. All other rights to discovery are waived." The agreement does not state the seller will get to choose which employee will be deposed, it gives each party one four-hour deposition, and both parties would have more discovery rights in civil litigation. These terms are not unreasonably favorable to Lithia.

[¶ 22] The district court did not err in finding Thompson failed to establish any quantum of substantive unconscionability. The arbitration agreement is not unconscionable and the court did not err in compelling arbitration.

## IV

[¶ 23] Thompson argues the district court erred by confirming the arbitrator's award. Thompson moved to vacate the arbitration award under N.D.C.C. § 32–29.3–23 and Section 10 of the FAA. Under N.D.C.C. § 32–29.3–23(1), an arbitration award shall be vacated if:

a. The award was procured by corruption, fraud, or other undue means;

b. There was:

   (1) Evident partiality by an arbitrator appointed as a neutral arbitrator;

   (2) Corruption by an arbitrator; or

   (3) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

c. An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 32–29.3–15, so as to prejudice

substantially the rights of a party to the arbitration proceeding;

d. An arbitrator exceeded the arbitrator's powers;

e. There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under subsection 3 of section 32–29.3–15 not later than the beginning of the arbitration hearing; or

f. The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 32–29.3–09 so as to prejudice substantially the rights of a party to the arbitration proceeding.

The FAA authorizes a court to vacate an arbitration award on similar grounds. *See* 9 U.S.C. § 10.

### A

[¶ 24] Thompson contends an award issued by an arbitrator who was not appointed in accordance with the agreed-upon procedures may be vacated because the arbitrator exceeded his powers. Thompson claims the arbitration agreement required the parties to settle substantive disputes by bringing arbitration in accordance with the rules of the AAA, the AAA Consumer Rules apply, and Corwin's selection as arbitrator did not comply with AAA rules. She contends the arbitrator did not have jurisdiction because he was not properly selected and the award should be vacated.

[¶ 25] The arbitration agreement at issue in this case provides:

   Seller and Customer agree that any controversy or claim arising out of or relating to: (a) the sale and/or financing of the Vehicle; (b) this Agreement; (c) the applicable retail installment sale contract or lease agreement signed between Customer and Seller; and/or (d) any al-

leged breach of this Agreement or such retail installment sale contract/lease agreement, shall be settled by binding arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be conducted by a single arbitrator and the parties agree that the arbiter shall be a retired judge from a State court of unlimited jurisdiction.

[¶ 26] The AAA Consumer Arbitration Rules apply whenever an arbitration agreement provides for arbitration by the AAA and the agreement is contained within a consumer agreement that does not specify a particular set of rules. AAA Consumer Rules R–1(a)(3). A "consumer agreement" is "an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices." AAA Consumer Rules R–1. The AAA Consumer Arbitration Rules apply to the arbitration agreement in this case.

[¶ 27] AAA Consumer Rule R–1(b) states, "When parties agree to arbitrate under these Rules ... they thereby authorize the AAA to administer the arbitration.... Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so." The rules also provide that the consumer and business may agree to change the Rules, but the agreement must be in writing. AAA Consumer Rule R–1(c). The parties agreed the arbitration would be in accordance with the rules of the AAA and they agreed in writing that the arbitrator would

be a retired judge from a state court of unlimited jurisdiction.

[¶ 28] AAA Consumer Rule R–14(a) and (c) state the arbitrator will have the power to rule on his own jurisdiction and a party must object to the jurisdiction of the arbitrator no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. Consumer Arbitration Rule R–50 states, "If a party knows that any of these Rules have not been followed, it must object in writing before proceeding with arbitration or it will lose its right to object that the rule has not been followed."

[¶ 29] Before arbitration, Thompson claimed she attempted to locate an arbitrator, but finding an arbitrator who met the requirements of the arbitration agreement would be difficult and expensive. She argued the arbitration agreement required the arbitrator be AAA certified and a retired judge. Thompson did not argue the court was not properly following the AAA rules to select an arbitrator. Nothing in the record indicates she objected to the procedure used to select the arbitrator prior to or during the arbitration proceedings; rather, she raised the issue for the first time in her brief in support of her motion to vacate the arbitration award.

[¶ 30] The AAA Rules required Thompson object in writing before proceeding with the arbitration if she believed the applicable AAA Consumer Rules were not followed or she would lose her right to object. Thompson did not object to the process used to pick the arbitrator before proceeding with arbitration. There is nothing in the record to indicate Thompson raised this issue before the arbitrator. Thompson waived this issue by waiting to raise it until after the arbitration was complete.

[¶ 31] A similar argument for vacating an arbitration award was made in *Brook v.*

*Peak Int'l, Ltd.*, 294 F.3d 668 (5th Cir. 2002). In *Brook*, an employee moved to vacate an arbitration award in favor of his former employer and the district court granted the motion ruling the arbitrator was not properly selected following the procedure outlined in the agreement. *Id.* at 669. The Court of Appeals reversed the district court's decision. *Id.* at 674. The court agreed the selection procedure outlined in the arbitration agreement was not followed, but held the employee was required to preserve his objection during the arbitration proceeding or it was waived. *Id.* at 673–74. The court said the employee never objected to the failure to follow the selection process specified in the arbitration agreement until the magistrate judge raised the issue as a possible ground for vacating the award. *Id.* at 674. The court said, "It is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Id.* (quoting *Marino v. Writers Guild of America, East, Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993)).

[¶ 32] Other courts have also held the failure to clearly object to a defect in proceedings prior to or during arbitration may constitute a waiver. *See, e.g., Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 149 (3d Cir. 2015) (holding a party is precluded from challenging an arbitration award on grounds of arbitrator misconduct if the party had constructive knowledge of the misconduct during the hearings and did not object); *Delta Mine Holding Co. v. AFC Coal Properties, Inc.*, 280 F.3d 815, 821 (8th Cir. 2001) (holding party waived issue of arbitrator's partiality by failing to raise it before arbitration panel); *Marino*, at 1484–85 (holding claim that it was unfair to keep arbitrators' identities confidential was waived by party's failure to protest procedure before

arbitrators were selected); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1263–64 (7th Cir. 1992) (holding party waived right to object to arbitrators on basis of their prior relationship with another party).

[¶ 33] Thompson's failure to object to the process used to select the arbitrator either when the arbitrator was selected or during the arbitration proceedings constituted a waiver. The district court did not err by failing to vacate the arbitrator's award on this ground.

### B

[¶ 34] Thompson argues the judgment confirming the arbitration award should be reversed because the FAA provides a one-year statute of limitations for a party to seek confirmation of an award and Lithia did not apply for confirmation before the statute of limitations expired. Thompson contends Lithia is barred from receiving confirmation of the award.

[¶ 35] North Dakota statutory law does not have a time limit for confirming an award, but it does require a party to move to vacate the award within 90 days of receiving notice of the award. *See* N.D.C.C. §§ 32–29.3–22 and 32–29.3–23(2). Section 9 of the FAA states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . .

Thompson claims Section 9 is a statute of limitations, Lithia never applied for confir-

mation of the arbitration award, and therefore the judgment confirming the award should be vacated.

[¶ 36] The federal courts are split in interpreting Section 9. Some courts have held there is a mandatory one-year period on confirmation and others have held the one-year period is permissive. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.,* 335 F.3d 152, 158 (2d Cir. 2003) (holding section 9 imposes a one-year statute of limitations); *Val–U Constr. Co. of S.D. v. Rosebud Sioux Tribe,* 146 F.3d 573, 581 (8th Cir. 1998) (holding section 9 is permissive and is not a statute of limitations); *Sverdrup Corp. v. WHC Constructors, Inc.,* 989 F.2d 148, 156 (4th Cir. 1993) (holding section 9 is permissive and does not bar the confirmation of an award beyond a one-year period). Although Section 9 may be interpreted as a mandatory one-year period for confirmation under the FAA, we do not have to decide that issue because exceeding that time period does not preclude all confirmations of an arbitration award.

[¶ 37] Sections 9 through 11 of the FAA provide for expedited judicial review to confirm, vacate, or modify arbitration awards. *Hall St. Assoc., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 578, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). The FAA provides a shortcut to confirm, vacate, or modify an award, but it is not the exclusive means to enforce an award. *Id.* at 582–83, 128 S.Ct. 1396. The Supreme Court said, "The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable." *Id.* at 590, 128 S.Ct. 1396.

[¶ 38] Thompson moved to vacate the award under N.D.C.C. § 32–29.3–23 and "the Federal Arbitration Act in general and specifically 9 [U.S.C.] § 10." Section 32–29.3–23, N.D.C.C., governs a motion to vacate an arbitration award under state law and authorizes the court to vacate the award in certain circumstances. The statute also states, "If the court denies a motion to vacate an award, the court shall confirm the award unless a motion to modify or correct the award is pending." N.D.C.C. § 32–29.3–23(4).

[¶ 39] Thompson moved to vacate the award under both state statutory law and under the FAA. Section 32–29.3–23(4), N.D.C.C., requires the court to confirm the award if it denies the motion to vacate and a motion to modify or correct the award is not pending. A motion to modify or correct the award was not pending. The district court was required to confirm the award after it denied Thompson's motion to vacate. Section 9 of the FAA did not preclude confirmation of the award under state statutory law. The court did not err in confirming the award.

V

[¶ 40] We affirm the order compelling arbitration, judgment confirming the arbitration award, and order denying a motion to vacate or for a new trial.

[¶ 41] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers